Jckddelc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DEDRA DE LA ROSA,

4                 Plaintiff,              New York, N.Y.

5           v.                            18 Civ. 3456(AJN)

6  PURE GREEN NYC 8TH STREET
   CORP,
7
                 Defendant.
8
   ------------------------------x
9
                                         December 20, 2010
10                                        3:38 p.m.

11 Before:

12                    HON. ALISON J. NATHAN,

13                                        District Judge

14                         APPEARANCES

15 PARKER HANSKI LLC
        Attorneys for Plaintiff
16 BY:  ADAM S. HANSKI

17 LEVIN-EPSTEIN & ASSOCIATES, P.C.
        Attorneys for Defendant
18 BY:  EUNON JASON MIZRAHI

19

20

21

22

23

24

25

Jckddelc

1        (Case called)

2        THE COURT:  Good afternoon.  I will take appearances

3   of counsel, starting with counsel for the plaintiff.

4        MR. HANSKI:  Good afternoon, your Honor.  Robert

5   Hanski, of Parker Hanski, on behalf of the plaintiff.

6        THE COURT:  Good afternoon, Mr. Hanski.

7        And for the defendant.

8        MR. MIZRAHI:  Good afternoon, your Honor.  Jason

9   Mizrahi, of be Levin-Epstein Associates, P.C., on behalf of

10  defendant Pure Green NYC 8th Street Corp.

11       THE COURT:  Good afternoon, Mr. Mizrahi.  Please be

12  seated.

13       OK.  Well, we're here for a status and scheduling

14  conference in this matter following the close of fact

15  discovery, and there was a dispute as to whether we should go

16  forward today.  I received the letter from counsel for the

17  defendant on December 18th asking me to adjourn the proceeding

18  because there was an effort underway to apply for a permanent

19  ramp, which defendant suggested would resolve the matter, and

20  plaintiff did object to that request and so I brought you in.

21  I want to make sure we're pushing forward, to see where we are,

22  and how we get this across the finish line.

23       Mr. Hanski.

24       MR. HANSKI:  Your Honor, maybe just as a little

25  background, the parties have engaged in discovery, completed

Jckddelc

1     discovery, and attended multiple mediations at the -- one

2     mediation and one settlement conference, to be precise.  At the

3     last settlement conference, plaintiff and one of the

4     defendants, the landlord, did reach a settlement in principle,

5     which is in the process of being papered over.  The plaintiff

6     and the tenant defendant, however, were not able to reach any

7     agreement and which leads us to today.

8             On December 13th, we received the letter which was ECF

9     filed from the defendants discussing a ramp.  And as was stated

10    in the letter, we reached out to the defendant, the tenant

11    defendant, to obtain more information, and was not able to get

12    any concrete information.  We even requested -- stated that we

13    would be happy to get the documents under the protection of

14    settlement discussions, if that was helpful, and there were

15    just no details, nothing to be provided, which led to the

16    objection.

17            And other than proceeding to trial at this point,

18    given what we have, we don't see a way to resolve it.

19            THE COURT:  All right.  Mr. Mizrahi.

20            MR. MIZRAHI:  Good afternoon, your Honor.

21            THE COURT:  Good afternoon.

22            MR. MIZRAHI:  By way of background, this complaint was

23    filed on the basis that on an unspecified date, plaintiff

24    attempted to access tenant's place of business.  Tenant

25    operates a juice bar located on 8th Street in Manhattan.  It is

Jckddelc

1    a 500-square-foot space.  The complaint alleges two categories

2    of alleged issues with respect to the premises.  The category

3    number one is issues relating to the entrance.  Category number

4    two are issues related to the interior of the space, namely,

5    the counter and certain nonstructural items associated on the

6    counter that she allegedly could not reach.

7            Very early in this case the parties had engaged in

8    alternative dispute resolution.  On May 9, 2019, the parties

9    attended a mediation collectively in an effort to settle this

10   case.  At the mediation, the parties prepared their respective

11   expert reports by third-party consultants that addressed each

12   and every of the violations that were outlined in the

13   complaint.  We had made our report available to opposing

14   counsel before the mediation, and we were prepared to discuss

15   them at length at the mediation.

16           The basis and the goal for mediation was to address

17   each and every one of the nonmonetary demands in the complaint,

18   make sure we were satisfactorily addressing the accessibility

19   issues that were outlined, to make sure that the space is

20   accommodable to anyone in a wheelchair, including plaintiff.

21           At the mediation, we made it abundantly clear that the

22   space had been equipped with a temporary ramp, and all of the

23   interior violations outlined in the complaint would be

24   satisfactorily addressed.

25           Specifically with respect to the entrance and the

Jckddelc

1    ramp, plaintiff's counsel had demanded the installation of a

2    permanent ramp.  The issue with respect to the entrance in this

3    case, the unique aspect of this case, your Honor, is that the

4    entrance is located adjacent to an MTA entrance, subway

5    entrance.  It is a graded entrance.  And as was made abundantly

6    clear at the May 9, 2019 mediation, that any application, or

7    any aspect of applying for some sort of permanent structure

8    that allows an entrance via wheelchair to the space by a

9    permanent ramp is impossible, it is not a possibility.  We have

10   this opinion from our third-party consultant, and I believe

11   that an opinion from plaintiff's own consultant will support

12   that.

13           Which brings me to my next point.  This case has

14   languished in court because of Mr. -- of plaintiff's counsel's

15   unreasonable demands --

16           THE COURT:  I just want to stop you for a second.

17           The December 13th letter from your firm, not from you,

18   says that:  "Defendant is applying for a permanent ramp."

19           MR. MIZRAHI:  Yes, your Honor.

20           THE COURT:  How is that -- but you just told me that

21   is impossible.

22           MR. MIZRAHI:  The application is likely going to be

23   denied, but we were intending to submit an application for a

24   permanent ramp to show that even the feasibility of applying

25   for the ramp is a lost cause.

Jckddelc

1          THE COURT:  I mean, OK.  That is not what the letter

2    suggests, but I suppose it is not inconsistent with it.

3          So what is your -- I mean, the letter was asking me to

4    wait for the application to be processed.  When did you file

5    the application?

6          MR. MIZRAHI:  At the date of the submission of the

7    letter, we had engaged a consultant to the provide a full

8    report as to his opinion to the filing of a permanent

9    application with the Department of Buildings.  The report that

10   we've obtained from our consultant had indicated that the

11   report would not only have to go through the Department of

12   Buildings, it would also require liaising with third-party MTA.

13         Based on the status of his report, we could not even

14   obtain a proposal from a third party to engage in what he

15   described in his own words as a failed attempt to sink money

16   into an application that was certainly going to be denied.  The

17   result --

18         THE COURT:  So you have not applied?

19         MR. MIZRAHI:  Your Honor, we have not applied.

20         THE COURT:  The December 13th letter said defendant

21   will be filing an application for a permanent ramp with the NYC

22   DOB.  This application will be dispositive of plaintiff's

23   claims.  So that you've changed course since then.  You are

24   not -- defendant is not going to file an application for a

25   permanent ramp?

Jckddelc

| | |
|---|---|
| 1 | MR. MIZRAHI:  Your Honor -- |
| 2 | THE COURT:  Is that yes or no? |
| 3 | MR. MIZRAHI:  The consultant who we've engaged to |
| 4 | submit that application refused to submit it. |
| 5 | THE COURT:  OK.  So, therefore, no, you are not going |
| 6 | to file an application for a permanent ramp, right? |
| 7 | MR. MIZRAHI:  Correct, your Honor. |
| 8 | THE COURT:  OK.  So we don't have to wait for |
| 9 | something that's not going to happen, right? |
| 10 | MR. MIZRAHI:  Correct, your Honor. |
| 11 | THE COURT:  So then we go to trial?  Nothing else to |
| 12 | wait for, correct? |
| 13 | MR. MIZRAHI:  Correct, your Honor. |
| 14 | THE COURT:  All right.  So let's pick a trial date. |
| 15 | What basic timeframe are you looking for, Mr. Hanski? |
| 16 | MR. HANSKI:  Your Honor, in the letter that we |
| 17 | provided to defendant previously, we had proposed |
| 18 | February 14th as a deadline for the Joint Pretrial Order and |
| 19 | that the parties be available for a potential trial date any |
| 20 | date during the week of April 6th or 13th. |
| 21 | THE COURT:  How long of a trial will this be? |
| 22 | MR. HANSKI:  I would anticipate, your Honor, two to |
| 23 | three days. |
| 24 | THE COURT:  I have April 13th available. |
| 25 | Mr. Mizrahi. |

Jckddelc

```
1            MR. MIZRAHI:  Yes, your Honor.  Defendants
2    respectfully request a submission deadline of the Joint
3    Pretrial Order to March 13th.
4            THE COURT:  Let's start with the trial date.
5    April 13th?
6            MR. MIZRAHI:  We would also respectfully request a
7    trial date to be scheduled in May, May 15th, or the week of May
8    the 11th would be accommodable.
9            THE COURT:  Mr. Hanski, are you available May 11th?
10            MR. HANSKI:  Your Honor, may I check my phone?
11            THE COURT:  Please.
12            MR. HANSKI:  Thank you.
13            (Pause)
14            That week is acceptable, your Honor.
15            THE COURT:  All right.  Trial will commence on
16    May 11th.
17            And then, Mr. Mizrahi, what is your proposal for the
18    submission of the pretrial materials?
19            This will be -- is there a jury demand or is this a
20    bench trial?
21            MR. HANSKI:  There is a jury demand, your Honor.
22            MR. MIZRAHI:  Defendant's propose a joint pretrial
23    submission deadline for April 22nd, your Honor.
24            THE COURT:  No, that won't work.  That's too late
25    because if there are in limine motions that need to be briefed
```

Jckddelc

1    and resolved in advance of trial.  So we'll set -- Mr. Hanski,

2    do you have a proposal?

3        MR. HANSKI:  Our proposal was February 14th, your

4    Honor.

5        THE COURT:  All right, February 14th.

6        So you can look at my individual rules as to what is

7    to be submitted on that date and including the default rules

8    for the briefing of in limine motions.  So any in limines to be

9    filed on that date, oppositions two weeks later, replies one

10   week after that.

11       And we'll set a final pretrial conference -- let me

12   see, we set May 11th as our date of trial, so we will meet --

13   well, we'll try for the morning of Friday, May 1st, at 11 a.m.

14   OK?

15       All right.  We've got our trial date and our

16   scheduling date.  And, as I said, please refer to my individual

17   rules for what's to be filed with the pretrial submissions.  We

18   will have -- we'll note this as a jury trial.

19       What else could the Court do to be of assistance

20   regarding settlement?  Mr. Hanski?

21       MR. HANSKI:  Your Honor, we've reengaged with

22   defendant in order to see if settlement could still be reached

23   after the failed settlement conference, and we would I guess

24   just continue and let the defendant know that we are open to

25   continuing discussions.  We're happy -- we've had some cases

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jckddelc

1   where we have been rereferred to the mediation program where

2   the mediator attempts to resolve through telephone discussions,

3   which I am, you know, I am happy to recommend to the client.  I

4   don't think that a further mediation would be useful, but

5   perhaps through telephone diplomacy, that could help resolve it

6   and, if so, I am happy to recommend that to the client.

7           THE COURT:  Do you know if the mediation referral has

8   been closed?

9           MR. HANSKI:  I believe it has, your Honor, given that

10  we went to Chief Magistrate Judge Gorenstein a few weeks ago,

11  so I believe it has, but I do not know for certain, your Honor.

12          THE COURT:  I would be happy if, Mr. Mizrahi, if you

13  are open to docketing a new mediation referral.  Would that be

14  of assistance, Mr. Mizrahi?

15          MR. MIZRAHI:  Your Honor, I am interested in

16  reengaging in mediation.  However, I have to preempt that by

17  saying that I'm leery of opposing counsel and how meaningfully

18  he is prepared to engage in settlement discussions.  Although

19  there have been settlement discussions in this case, they have

20  been unreasonable.  As this Court has characterized opposing

21  counsel's settlement position in other cases -- specifically, I

22  would like to direct the Court's attention to case number

23  17-cv-0423 -- opposing counsel, while they may be prepared to

24  appear at a mediation or settlement conference, they take

25  wholly unreasonable settlement positions.  I do not believe

1    that opposing counsel is prepared to meaningfully engage in

2    settlement discussions.

3         THE COURT:  Well, I have set a trial date, so all I

4    can do otherwise is try the case, unless you have some

5    additional suggestion.  My powers to order reasonableness, I

6    assure you, are limited, and that's why we have trials.  So

7    either the parties settle or we resolve it with the jury.

8         MR. MIZRAHI:  We would like to reserve our right to

9    appear either telephonically or not telephonically in some form

10   of alternative dispute resolution, your Honor, yes.

11        THE COURT:  OK.  So I will do the mediation referral.

12   All I can do is encourage counsel to be reasonable.  I don't

13   look well on fee requests that include unnecessary prolonging

14   of litigation, but I also don't look well on other forms of

15   intransigence.  And as I sit here, I don't know why the last

16   communication I have from the defendant said that we should put

17   everything on hold until a permanent application has been

18   approved that I'm now told will never be filed.  I trust that

19   things changed from when that letter was written, but maybe one

20   of the things that changed was the Court's denial of that

21   request.

22        So everybody should take a breath, start over.  As we

23   know, you can't get blood from a stone, and you can't always

24   get the modifications for every business.  So work out what you

25   can, and if you can't, it will be resolved the week of

Jckddelc

1    May 11th.

2                Are there still crossclaims between the defendants in

3    this case?  Am I right, Mr. Mizrahi, there have been

4    crossclaims?

5                MR. MIZRAHI:  I believe so, your Honor.

6                THE COURT:  And those are -- what is the plan there?

7                MR. MIZRAHI:  I have contacted former co-defense

8    counsel -- co-defense counsel approximately one week ago.

9                THE COURT:  Forgive me.  I don't have the docket right

10   in front of me.  You cross claimed, or they cross claimed

11   against you?

12               MR. MIZRAHI:  I believe they may have a crossclaim

13   against the tenants, "they" being the landlord in this case,

14   and I contacted her to check on the status of the crossclaim in

15   light of the settlement discussions that have been taking place

16   between landlord and plaintiff.  She wasn't able to communicate

17   whether or not those cross claims were going to be continued

18   and what her intentions were with respect to any claims against

19   the tenant.

20               THE COURT:  Well, she is not here today, which I take

21   is a sign that the tenant defendant is out of the case.  I'll

22   put out an order confirming that those crossclaims are being

23   dismissed.

24               MR. MIZRAHI:  She did in fact represent that her

25   representation in this case was only limited to defending the

Jckddelc

1    accessibility claims against her client filed by plaintiff.

2              THE COURT:  What are the nature of the crossclaims?

3              MR. MIZRAHI:  I'm not sure, your Honor, but if I were

4    to guess, I would imagine that they would be claims arising

5    under the contractual lease between landlord and tenant.

6              THE COURT:  All right.  I will put out an order

7    confirming that those claims are being dismissed since the

8    cross claimant is not present.

9              With that, we have our schedule.  You will have a

10   referral to the mediator.  Again, what I'll ask is in two

11   weeks' time, if you will put in a letter letting me know when

12   your mediation, by phone or otherwise, is scheduled for.

13             Anything else I can do at this time, Mr. Hanski?

14             MR. HANSKI:  Nothing, your Honor.

15             THE COURT:  Mr. Mizrahi?

16             MR. MIZRAHI:  Nothing further, your Honor.

17             THE COURT:  We are adjourned.  Have a good weekend and

18   happy holidays.

19             THE CLERK:  All rise.

20             MR. HANSKI:  Thank you, your Honor.

21             MR. MIZRAHI:  Thank you, your Honor.

22             (Adjourned)

23

24

25